To the Authorities Responsible

| | | | |
|---|---|---|---|
| Your notice as of<br>Your ref | Our ref (please always quote!)<br>2 U 55/99 | Phone, Fax, Contact<br>+49(0)261/102-<br>2829, 2900<br>Ms. Polcher | Date<br>10/29/2004 |

In the Proceedings

IMETRA International Metal Trading GmbH IL., as represented by the liquidator Mr. Dierk Behrmann, Im Nettetal, D-56729 Ettringen, GERMANY.

- **Defendant and Appellant** -

Procedural Representatives:     Lawyers Prof. Dr. Kropshofer & Colleagues,

Viktoriastraße 23, D-56068 Koblenz, GERMANY

Versus

Highbell Trading Corp. Ltd., as represented by their board members Sabine Enterprises S.A. and Lázsló Szabó, 14 East North Street, City of Dover, Country of Kent, Delaware, USA,

- **Plaintiff and Respondent** -

Procedural Representatives:     Lawyers Sternebeck & Partner, Theodor-Heuss-Ring 1,

56068 Koblenz, GERMANY

C o n c e r n i n g     Claims

2

We herewith ask that the following witnesses be questioned in the context of judicial assistance:

a) Mr. Edward J. Freel, Secretary of State of the State of Delaware, Dover, County of Kent,

b) Victor Silioukov, to be subpoenaed in the stead of the Highbell Trading Corp. Ltd., as represented by their board members Sabine Enterprises S.A. and Lázsló Szabó, 15 East North Street, City of Dover, Country of Kent, Delaware, USA,

According to the findings of evidence as of 29 January 2004:

I.

Witness Mr. Edward J. Freel on the statement of the Respondent,

According to which the Appellant did not own an office or an entry in the phone and fax registry, and neither a telephone nor a fax connection.

II.

Witness Mr. Victor Silioukov on the statements of the Respondent,

According to which

1. None of the Appellant's employees had ever been present in Delaware;

2. All of the decisions concerning the Appellant had been made in Moscow. No correspondence via Delaware had taken place between the parties during the contract negotiations and the fulfilment of the contract – only via Moscow or Samara;

3. The Appellant had not disposed of any employees and was not involved in any genuine business activities;

4. The Inkom Metal Inc., through their Deputy General Manager as being General Manager of the Appellant, had solely decided upon the issue of which kind of activities the Appellant had to carry out as well as the respective terms & conditions.

Summary of Facts:

On 6 May 1997, the parties concluded two frame contracts concerning the supply of aluminium from Samara/Russia to the Respondent. In the lawsuit present, the Appellant is claiming the payment of invoices totalling 12,270,005.91 deutschmark (6,273,554.35 EURO) as well as contractual damages amounting to 1,216,986.79 deutschmark (662,235.47 EURO).

The Respondent has contested the lawsuit claiming the total amount, stating that the Appellant was a false front company without an office of their own, without telephone or fax, without employees or business activities. Under the address in question there was only the office of the registering agent. The Appellant's 100% parent company, the Shamrock Holding Inc. Dover, USA, was a letter box company as well. Their 100% parent company, in turn, was the Inkom Metal Inc., Moscow. The Appellant did not really exist, but merely constituted a dependant member of Inkom Metal. All decisions would be made in Moscow by the Inkom Metal Inc., and not in Delaware.

The Appellant has opposed this statement. They are asserting that they are a Corporation in compliance with the laws of the State of Delaware, USA. Their postal headquarters in Dover, USA also was the administrative headquarters, where fundamental business decisions have been made. Thus, the Defendant's statement concerning the Company conglomerate was insubstantial.

According to the application of the Appellant, the Landgericht [regional court] Koblenz has made a full-fledged decision in favour of the Appellant.

The Landgericht Koblenz confirmed the admissibility of the action und assumed legal capacity of the Appellant. In order to support this view, the Court stated the fact that the Appellant was registered in the Register of Corporations of the State of Delaware, USA, which in turn was basic evidence for the existence of the Appellant as a business. Moreover, Article XXV, Paragraph 5 p. 2 of the Treaty of Friendship, Commerce and Navigation between the United States of America and the Federal Republic of Germany as of 29 October 1954 speaks in favour of the Appellant, according to which a Corporation, being incorporated in compliance with the laws and regulations of either contracting party in their jurisdiction, were deemed a Corporation of the respective contracting party.

On the grounds of the said German-American treaty, a Corporation incorporated in the US in compliance with the statutory regulations of the respective State does have legal capacity irrespective of the location of their administrative headquarters. The assertions of the Respondent, according to which the Appellant did not dispose of an office, telephone, fax or employees in Dover, Delaware, USA and did not reveal any business activities, are not supported by evidence.

This is the decision in opposition; it is contested by the appeal of the Respondent, who has applied to dismiss the case.

The Respondent flatly denies the existence of the Appellant. The statement, according to which the Appellant were listed with a register in Delaware, USA, is being contested and by itself deemed inadequate to show or prove the existence, the legal capacity or the capacity to sue and be sued. Anyway the Appellant did not dispose of any bodies enabling them to act, and they did not dispose of any representatives, who would be capable of or entitled to uttering legally binding statements on their behalf – which also applies to the authorization of their Procedural Representatives.

All decisions concerning the Appellant would be made in Moscow by Inkom Metal. The legal opinion that an existing Corporation incorporated in the US, had either legal capacity or the capacity to sue and be sued in Germany on the grounds of the Treaty of Friendship, Commerce and Navigation between the United States of America and the Federal Republic of Germany, is deemed invalid if there are no factual links to the statutory country (so called "genuine link").

The Respondent applies to the Court to vary the verdict of the 2nd Chamber for Commercial Affairs of the Landgericht Koblenz as of 2 December 1998 and to dismiss the action.

The Appellant applies to the Court to reject the appeal.

They are stating that the question concerning the legal capacity and thus the capacity to sue and be sued of the Appellant should be judged in compliance with the regulations of the US state of Delaware. According to the company law of this state, any natural or legal person has the right to incorporate a Corporation. The business founder is only required to submit articles

of incorporation with the Secretary of State of the State of Delaware and to pay the respective fees. An effectively incorporated corporation will retain their legal capacity until it is revoked by the authorities. The effective incorporation of the Appellant as of 6 September 1996 through the Incorporating Service Ltd. was evident from the submitted "Certificate of Incorporation". The continued existence of the Corporation was evident from the submitted "Certificate of Good Standing".

The authorization of their Procedural Representatives is said to be verified by submission of the original proxy as of 15 June 1998. The authorization of the Procedural Representatives for the Boards of Appeal might be inferred from the original authorization as of 22 January 1999. The signer of the authorization documents, i.e. Mr. Victor Silioukov, is said to have been authorized to grant the authorizations material to these proceedings in the name and on behalf of the Appellant. Mr. Silioukov is also said to have been designated a Representative Body under the statement of the incorporated company. Rules concerning power of representation were part of the statutory declaration as of 9 September 1996 as well as of the statutes themselves, as laid out by Victor Silioukov on that same day. On occasion of the shareholders' meeting as of 26 March 1998, a second Director was appointed in addition to Victor Silioukov; that is Nikolai Zakharov. Since the Directors habitually remain in charge until the next shareholders' meeting, it may be inferred that Victor Silioukov was in charge when he granted the two authorizations.

In a preliminary verdict of the Court's Senate as of 16 October 2003, the admissibility of the action was affirmed. Emphasis is laid on the fact that the Appellant has been found to have the capacity to sue and be sued and that Mr. Victor Silioukov rightfully granted the required procedural authorization to the Procedural Representatives of the Appellant. The capacity to sue and be sued of the Appellant is derived from Art. XXV, Para. 5 p. 2 of the Treaty of Friendship, Commerce and Navigation between the United States of America and the Federal Republic of Germany, which makes the capacity to sue and be sued contingent upon the respective articles of incorporation. A duly incorporation of the Appellant according to the laws of the State of Delaware, USA has been assumed. The Appellant is in existence and does have legal capacity, as the "Certificate of Incorporation" bears the annotation "filed". The Corporation continues to exist, as can be inferred from the "Certificate of Good Standing."

The right of Victor Silioukov to grant procedural authorization has been judged in compliance with the laws and regulations of Germany. Accordingly, Victor Silioukov has been designated a Representative Body to the Appellant according to § 108 c of the General Company Law of Delaware, by means of "Statement of the Incorporated Company". According to the founder's statements and the statutes in effect, Victor Silioukov is also entitled to grant procedural authorizations. Anyway, this authority was still in effect at the time of granting the procedural authorization on 15 July 1998.

Now, in the further course of the proceedings it must be decided if – judging by the location of the Main Office of the Appellant – the Appellant is a mere fictitious formation of a corporation or if the concluded contracts represent mere fictitious transactions. Moreover, it must be established which legal consequences would result from such machinations according to the applicable code of justice. For this reason, the court-ordered taking of evidence is indispensable.

We ask that – prior to the questioning proper – the person to be questioned be told his right of denial of testimony, as shown in the enclosed excerpt of the German Code of Civil Procedure (§§ 383 – 385 ZPO). Furthermore, we ask that the Procedural Representatives to either party be informed timely about the hearing, in order to enable them to attend the said hearing.

Now, we ask to ask the witness Mr. Edward J. Freel the following questions:

1. What is your name and age?
2. What is your profession?
3. Are you related (by marriage) to any of the Procedural Representatives to either Party?
4. Do you know the Appellant?
5. Does the Appellant own office rooms under their address?
6. Is the Appellant listed in the phone and fax registries?
7. Does the Appellant own a phone or fax connection?
8. Are there any other facts pertaining to the controversial aspects of these proceedings, of which you are aware and which you have not yet stated in this place? Please expand at length on any such facts.

We ask to ask the witness Mr. Victor Silioukov the following questions:

1. What is your name and age?
2. What is your profession?
3. Are you related (by marriage) to any of the Procedural Representatives to either Party?
4. Are you in the Appellant's employ? If so, in which function?
5. Have any employees of the Appellant ever been present in the Delaware firm?
6. Have all decisions concerning the Appellant been made in Moscow? If so, what is the name and address of the respective firm?
7. During the contract negotiations and the fulfilment of the material agreement between the contracting parties, was correspondence concerning the Appellant executed in Delaware, or was this correspondence solely executed in Moscow and Samara?
8. Has the Appellant ever disposed of employees or been engaged in business activities in Delaware?
9. Has the Inkom Metal Inc., through their Deputy General Manager Silioukov as being General Manager of the Appellant, solely decided upon the issue of which kind of activities the Appellant had to carry out and the respective terms & conditions?
10. Are you still aware of any other facts pertaining to controversial aspects of these proceedings, upon which your questioning is based? Please expand at length on any such facts.

Yours faithfully

The Reporter:

[Signature]
(Ickenroth)
Judge at the local first instance court

Appendix: Excerpt from the German **Code of Civil Procedure** (§§ 383 – 385 **ZPO**).

**APPENDIX: German Code of Civil Procedure (§§ 383 – 385)**

**§ 383 The Right to Denial of Testimony for Personal Reasons**

(1) The following individuals are entitled to Denial of Testimony:
   1. The fiancée of either Party;
   2. The spouse of either Party, even if the marriage has been divorced;
   2a) the life partner of either Party, even if the relationship does no longer exist;
   3. All individuals, who are or were related (by marriage) to either party in a straight line, those who are or were laterally related to the third degree or those who are or were related by marriage to the second degree;
   4. Clerics, in consideration of what has been confided to them in Soul Care;
   5. Individuals, who are or were professionally involved in the design, production or dissemination of periodical prints or radio broadcasts on the persona of the author, submitters or agents of essays or documents as well as on information revealed to them with respect to their activities, as far as essays, documents and notices for the editorial part are concerned.
   6. Individuals to whom due to their position or business, have been confided facts, the secrecy of which is necessitated by their nature or by laws and regulations with respect to facts, to which the obligation of silence pertains.

(2) Those individuals as listed under 1 – 3 should be told their right of denial of testimony prior to the questioning.

(3) Even if testimony is not denied, the questioning of those individuals as listed under 4 – 6 should not be guided toward facts, from which may be inferred that testimony cannot be made without violating their obligation of silence.

### § 384 Denial of Testimony for Material Reasons

Testimony may be denied:

1. On matters, the answering of which would cause a direct property damage to either the witness themselves or to an individual, to whom they are related in compliance with § 383, No. 1 – 3;
2. On matters, the answering of which would subject either the witness themselves or an individual, to whom they are related in accordance with § 383, No. 1 – 3, to dishonour or expose them to the risk of being prosecuted on the grounds of a crime or offence;
3. On matters, which the witness would not be in a position to answer without revealing an art's or business secret.

### § 385 Exemptions from the Right of Denial of Testimony

(1) In the cases of § 383 No. 1 – 3 and § 384 No. 1, a witness may not deny testimony:
   1. On the establishment and the nature of legal transactions, to the establishment of which he or she was a witness;
   2. On childbirth, marriage or the death of family members;
   3. On facts pertaining to asset issues resulting from family relations;
   4. On acts pertaining to the controversial legal relationship, which he or she allegedly committed as being legal predecessor or representative to either party.

(2) The individuals as listed in § 384 Nos. 4, 6 may not deny testimony if they have been relieved of the obligation of silence.

Für die Vollständigkeit und Richtigkeit der Übersetzung /
To confirm the completeness and correctness of this translation

Martin Gilbert
Diplom-Übersetzer
Vom Präsidenten des Landgerichts Koblenz ermächtigter
Übersetzer der englischen und russischen Sprache für die
Gerichte und Notare des Landes Rheinland-Pfalz